# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jeremy Walters,**
**Plaintiff Below, Petitioner**

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No.  17-0451** (Wayne County 16-C-067)

**City of Kenova, W.Va., and Ray Mossman,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Jeremy Walters, by counsel Kevin P. Davis, appeals the April 19, 2017, order of the Circuit Court of Wayne County that granted summary judgment to Respondent City of Kenova, W.Va. and Respondent Ray Mossman, the City of Kenova's former police chief, in petitioner's action for defamation. Respondent City of Kenova filed a response in support of the circuit court's order by counsel Perry W. Oxley, Laci B. Browning, and L.R. Sammons, III. Respondent Ray Mossman also filed a response in support of the circuit court's order, by counsel Tyler B. Smith. Petitioner appeals the circuit court's findings that he could not satisfy the "falsity" element of a defamation claim and that Respondent City of Kenova was immune from liability under the Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-5(a)(12).

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At 4:12 p.m. on June 2, 2015, police officers from the City of Kenova's Police Department arrested petitioner for felony "possession of a controlled substance (hydrocodone)." Later that same day, Respondent Ray Mossman ("Mr. Mossman"), then the City of Kenova's chief of police, authored a post on the "KenovaPD" Facebook page[1] in which he said five people had been arrested that day, and one of the five had been arrested for the unlawful possession of cocaine. Respondents claim Mr. Mossman did not name any of the arrestees. Petitioner counters that the post named him as the person arrested for possession of cocaine, despite the fact that the police arrested him for possession of hydrocodone. Petitioner admits that he never saw the post, but claims a friend told him the post named petitioner and said the police arrested him for possession of "crack cocaine." However, because the City of Kenova deleted the post a month after Mr. Mossman placed it on Facebook; the parties' competing claims cannot be proved.

---

[1] The "KenovaPD" page was a personal page connected to Respondent Ray Mossman's Facebook account.

1

A few hours after petitioner's arrest, petitioner's wife called Mr. Mossman and told him the Kenova police charged petitioner with the unlawful possession of hydrocodone. Around 9:00 p.m. that same evening, Mr. Mossman edited the Facebook post to say the arrest was for the unlawful possession of hydrocodone. At the time Mr. Mossman edited the post, it had 220 "likes."[2]

On July 24, 2015, petitioner published the events of June 2, 2015, on his own Facebook page. In that post, petitioner gave his name and stated that the Kenova Police arrested him on June 2, 2015, and that Mr. Mossman thereafter wrongfully claimed the police charged him with possession of crack cocaine.

On July 1, 2015, a month after petitioner's arrest, a television reporter interviewed the City of Kenova's new mayor. Petitioner happened to be at the Kenova City Hall during that interview. Petitioner approached the reporter and, on camera, said that the Kenova police arrested him for having his grandmother's prescription hydrocodone in his car, and that Mr. Mossman wrongfully posted on Facebook that the police arrested him for possession of crack cocaine. Thereafter, petitioner's name and the contents of Mr. Mossman's June 2, 2015, Facebook post were aired on the television newscast that included the new mayor's interview.

The reporter also interviewed Mr. Mossman on camera. During that interview, the reporter told Mr. Mossman about petitioner's comments and asked Mr. Mossman about the post regarding petitioner's arrest. Mr. Mossman did not mention petitioner's name, but said, "[I]t was hydrocodone. It's the same kind of charge, but yeah, it was a misprint on my part, and I changed it." The television newscast aired Mr. Mossman's interview immediately after it aired the new mayor's interview. Petitioner's charge for unlawful possession of hydrocodone was still pending at the time.

On July 2, 2015, petitioner shared the internet link to the television newscast containing the new mayor's and Mr. Mossman's interviews on his Facebook page. That day or the next, the "KenovaPD" page was taken down and all the page's posts, including the one allegedly about petitioner, were deleted.

Petitioner's unlawful possession of hydrocodone charge was later dismissed. Then, on December 3, 2015, petitioner posted the following on his Facebook page:

> So since my charges have been dismissed the cops are supposed to give my grandmothers [sic] meds back to me. . . . Still haven't gotten it back. They keep giving excuses!!! It's cool cause every time they do I go cha Ching!!!!

Additionally, on February 9, 2016, petitioner posted the following on his Facebook page:

---

[2] "When a Facebook user posts content . . . , a button that says "Like" will appear below the post. Other Facebook users who view the post can click that button, thereby indicating their appreciation of the post. These are colloquially referred to as 'likes.'" *Com. v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013).

Hello, my name is Jeremy Walters. I was arrested for having my grandmother's meds that I had just picked up from the pharmacy. The meds were in my glove box, in the bottle, stapled up in the bag still. I told them I was her Medical Power of Attorney and they had no interest in seeing the papers. Mossman posted on Kenova PD Facebook that I was arrested for crack cocaine. My charges have been dropped. . . .

On May 20, 2016, petitioner filed this defamation case against respondents. Petitioner alleged that Mr. Mossman's post damaged his reputation because it wrongfully reported the Kenova police arrested petitioner for the unlawful possession of crack cocaine. In his complaint, petitioner alleged that more than 5,000 people "liked" the "Kenova PD" page, and that those in the area would have seen Mr. Mossman's post and the televised interviews of Kenova's new mayor and Mr. Mossman.

At petitioner's January 11, 2017, deposition, he admitted that he had never seen Mr. Mossman's post about his arrest. When asked about his losses from the alleged defamation, petitioner relied, "Can I estimate what business I lost? Absolutely not. How can I? How can I tell you that a customer ain't going to contact me [about my lawn care business] because they seen the post?" Also at the deposition, petitioner stated he calculated his alleged damages based upon the number of page views or "likes" allegedly on Mr. Mossman's Facebook page following the post about petitioner's arrest. Specifically, petitioner testified that "someone" told him there were 5,000 likes on Mr. Mossman's Facebook page. Petitioner further testified that he presumed a loss of $10 per person for each of the 5,000 possible likes for a total of $50,000 in damages. Petitioner admitted this calculation was "absolutely speculation." Finally, petitioner admitted that he did not know whether any other City of Kenova employee had access to or made comments about him on the "KenovaPD" page.

In March of 2017, both Mr. Mossman and the City of Kenova filed motions for summary judgment. Mr. Mossman, who was not deposed by any party, attached to his motion for summary judgment an affidavit explaining what he claimed occurred, and exhibits showing that petitioner identified himself on his own Facebook page and in the televised interviews as the person arrested for possession of cocaine. At an April 3, 2017, hearing on respondents' summary judgment motions, petitioner's counsel attempted to file a response to respondents' summary judgment motions, which the court refused as untimely. However, the circuit court allowed petitioner's counsel to argue against respondents' motions at the hearing.

By order entered on April 19, 2017, the circuit court granted summary judgment to respondents and dismissed petitioner's complaint with prejudice. First, the circuit court found petitioner could not meet the "falsity" element of a defamation claim because cocaine and hydrocodone are Schedule II narcotics and carry the same criminal penalty. Therefore, the court concluded that, even if the post alleged that the Kenova police arrested petitioner for possession of cocaine or crack cocaine, instead of possession of hydrocodone, there would have been no different effect on the mind of the post's average reader. Second, the circuit court found that the City of Kenova was entitled to immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act"), West Virginia Code § 29-12A-1 to -18. Petitioner now appeals the circuit court's order.

3

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Furthermore, "[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." *Id.* at Syl. Pt. 6. Our review of such motions is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Finally, the Court is required to "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Id.* at 192, 451 S.E.2d at 758 (citations omitted).

Petitioner raises eight enumerated assignments of error[3] on appeal.[4] The essence of these assignments of error is that the circuit court erred in granting summary judgment to respondents

---

[3] Petitioner's assignments of error are:

1. Whether the trial court committed error by finding there was no genuine issue of material fact following Motions for Summary Judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure.
2. The trial court committed reversible error by finding the sworn testimony of Jeremy Walters regarding the incident of this case does not qualify as defamation and meet the legal standard for such claims in West Virginia.
3. Findings of Fact in the Order granting the Summary Judgment, paragraph 3, is a disputed fact and addressed in Jeremy Walters deposition attached to the Plaintiff's Motion.
4. Findings of Fact in the Order granting Summary Judgment, paragraph 4, indicates Defendant posted a false statement disputed fact.
5. Findings of Fact in the Order granting Summary Judgment, paragraph 6, indicates Jeremy Walters was trying to redeem his character on the news disputed fact.
6. Findings of Fact in the Order granting Summary Judgment, paragraph 7, indicates Defendant Mossman's post was a misprint disputed fact.
7. A rational juror could ultimately conclude Defendant Mossman defamed Jeremy Walters.
8. The Court focus is on the false statement, and there is no denying the statement was false, or at least, subject to a genuine issue of material fact as seen in the transcript from the hearing.

[4] Petitioner's counsel fails to explain or even address many of these assignments of error in the "Argument" section of his brief. Consequently, we caution counsel that Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

4

because there existed genuine issues of material fact as to whether the post was defamatory, and whether the City of Kenova was entitled to immunity under the Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-5(a).

We first address petitioner's argument that summary judgment was improper due to the existence of genuine issues of material fact regarding petitioner's defamation claim. "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, *Crump v. Beckley Newspapers*, 173 W.Va. 699, 320 S.E.2d 70 (1983). Petitioner argues that the post was defamatory as defined by *Crump* because it was a non-privileged communication to a third party; false; referred to petitioner; was, at least, negligent on the part of Mr. Mossman; and resulted in injury.

Having drawn any permissible inferences from the underlying facts in the light most favorable to petitioner, we concur with the circuit court's finding that petitioner's defamation claim fails as a matter of law because petitioner cannot establish the falsity element of his claim. As we have held,

> The law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates on substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Syl. Pt. 4, *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 480 S.E.2d 548 (1996). Here, although the police arrested petitioner for unlawful possession hydrocodone, the post allegedly provided that someone, perhaps petitioner, was arrested for possession of a different Schedule II drug, either cocaine or crack cocaine. Both hydrocodone and cocaine are Schedule II narcotics. *See* W.Va. Code §§ 60A-2-206(b)(l)(K) and -206(b)(4). Moreover, under West Virginia law, there is no distinction with respect to the punishment for the unlawful possession of hydrocodone or cocaine. *See* W.Va. Code § 60A-4-401. Thus, even if the post alleged petitioner's arrest was for the unlawful possession of cocaine, there would have no different effect on the mind of the average reader. Hence, the alleged minor inaccuracy in the post did not rise to the level of "falsity" because the substance of the claim was accurate. Accordingly, because petitioner could not prove an element of his defamation claim, the circuit court properly granted respondents' motions for summary judgment on that ground.

---

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, then Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that . . . fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Here, petitioner's brief is inadequate as it fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure.

5

Petitioner also argues there were genuine issues of material fact as to whether the City of Kenova was entitled to qualified immunity. Petitioner highlights that the Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-4(c)(2) provides that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." Petitioner also highlights that, at the time the post was placed on Facebook, Mr. Mossman was an employee of the City of Kenova and Mr. Mossman's post either negligently or intentionally provided that petitioner had been arrested for possession of cocaine. Accordingly, petitioner argues that the City of Kenova is not immune from his defamation suit.

We disagree and find that the circuit court correctly found that the City of Kenova was immune from liability under the Governmental Tort Claims and Insurance Reform Act. The purpose of the Act is "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances. . . ." W.Va. Code § 29-12A-1. The Act defines "political subdivision" to include a "municipality" such as the City of Kenova. W.Va. Code § 29-12A-3(c). Under the Act, "[a] political subdivision is immune from liability if a loss or claim results from . . . [m]isrepresentation, if unintentional." W.Va. Code § 29-12A-5(a)(12).

Here, petitioner alleged Mr. Mossman posted erroneous information about his arrest. However, petitioner did not allege that the City of Kenova or anyone connected with it other than Mr. Mossman played a role in, or authorized, the Facebook post. Further, petitioner presented no evidence that Mr. Mossman intentionally misrepresented the charge for which petitioner was arrested. In fact, Mr. Mossman admitted during the televised interview that, "it was hydrocodone. It's the same kind of charge, but yeah, *it was a misprint on my part*, and I changed it." (Emphasis added.) Thus, the evidence below showed that the language of which petitioner complains was an unintentional error that Mr. Mossman corrected as soon as he learned of it. Petitioner presented no evidence to counter Mr. Mossman's "unintentional misprint" claim. "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Painter*, 192 W.Va. at 192–93, 451 S.E.2d at 758–59 (citation omitted). Thus, the circuit court correctly concluded that there was no evidence of a genuine dispute of material fact regarding whether Mr. Mossman's misrepresentation was intentional. Consequently, we find that the circuit court properly granted summary judgment to the City of Kenova on the ground that it was immune from suit under West Virginia Code § 29-12A-5(a).

Accordingly, for the foregoing reasons, we affirm the circuit court's April 19, 2017, order.

Affirmed.

**ISSUED:** May 11, 2018

6

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Men is E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis